Danny REESE, Movant–Appellant,

v.

STATE of Missouri, Respondent–Respondent.

No. 52829.

Missouri Court of Appeals, Eastern District, Division One.

Dec. 8, 1987.

Susan L. Hogan, Columbia, for movant-appellant.

John M. Morris, Asst. Atty. Gen., Jefferson City, for respondent-respondent.

REINHARD, Judge.

Movant appeals after the denial of his Rule 27.26 motion following an evidentiary hearing. We affirm.

In April 1985, movant was found guilty by a jury of rape, and he was sentenced by the court to a term of 10 years' imprisonment. We affirmed the conviction in *State v. Reese*, 700 S.W.2d 522 (Mo.App.1985).

The evidence supporting movant's conviction was that at the time of the offense he was living with the victim's sister in Memphis, Missouri. Around 12:30 a.m. on October 3, 1984, movant placed a collect telephone call to the victim from Downing, Missouri. Movant told the victim he was stranded in Downing, and he asked her to go pick up her sister Lorna, the woman with whom movant lived, and take her to the victim's residence. The victim, unable to comply because she had no transportation, went to sleep. At 2:30 a.m., movant awakened the victim by knocking at her kitchen door and asked if Lorna was there. After explaining why Lorna was not there, the victim permitted movant to enter. Movant and the victim remained in the kitchen for 15 to 20 minutes. The victim then went into her bedroom to attend to her infant son who had begun crying. When she turned to leave the bedroom, movant was standing in the doorway. He grabbed her, put a knife to her throat, and forced her to engage in sexual intercourse. As soon as movant left her house, the victim called her mother who arrived within minutes.

One major issue at trial was whether movant was intoxicated. The victim testified that she had seen movant intoxicated on "many" occasions and that he was not drunk at the time of the rape. The victim's mother testified that her daughter called her at 3:00 a.m. After she went to the victim's home, she immediately went to the home of her daughter, Lorna. When she arrived there, she testified, movant was "in the bedroom ... passed out." He was "fully dressed and face-down on the bed."

Movant testified that he began drinking around 6:00 the previous evening and that he consumed approximately 2½ pints of schnapps and at least 15 cans of beer. He said he remembered making the telephone call to the victim but, because he was so intoxicated at the time, he did not know if he had gone to the victim's house and did not know if he had raped her.

Movant presented expert testimony at his trial that a person with a chronic alcohol abuse problem might experience "psychogenic amnesia" that could prevent his remembering his actions during a period of intoxication. Although a person in a state of psychogenic amnesia would be ambulatory and able to follow a normal routine, the expert said it would be "highly unlikely" that a man in such a state could perform sexually. The expert stated a man would, however, have to reach a certain level of intoxication to be rendered incapable of sexual performance. The jury deliberated less than one hour before returning its verdict.

In his Rule 27.26 motion movant alleged numerous grounds for relief including allegations of ineffective assistance of counsel because his trial attorney did not investigate certain witnesses and did not call two alibi witnesses to testify.

At the motion hearing, movant testified about his various allegations and stated, "There's 30, 40, 50 people that knows how drunk I was that night." Lorna Reese testified that, after the trial, she married movant. She stated that on the night of the rape movant arrived at their home about 1:45 a.m., fell face first on the bed, and lost consciousness. She said movant was in bed before 2:30 a.m. and remained there all night except when he arose when her mother arrived around 3:30 a.m. She said she was prepared to testify at trial but movant's counsel told her to go home.

The motion court received into evidence a written statement from Leo Holton who was in Indiana at the time of the hearing. In the statement, Holton said, "On the night that [movant] is accused I took [him] home that night, to his house in Memphis. I waited to see that he got in all right, and

when he turned the light on, I left." In the statement Holton said that on the day of the trial he was present and prepared to testify and that he told movant's counsel that on the night of the rape movant "was drunk enough that he did not need to try and drive home." Movant's counsel then told Holton to leave the courthouse. Phyllis Craig testified that she lived directly across the street from the victim's house. She said she was awake around 2:15 a.m. and did not notice any activity or see any lights at the front of the victim's house.

Movant's trial counsel testified that he, movant, and Mrs. Reese together decided not to call Holton and Mrs. Reese as witnesses. Counsel said that Holton contradicted movant about the amount of intoxicants he had consumed and "I'd asked him, whether or not, he felt that [movant] was drunk, was intoxicated, and he said, 'no.'" Concerning Mrs. Reese's testimony, counsel said she had been unable "to firmly establish the time that [movant] had come home, or the time that she could recall that he was in bed. Unlike the testimony today, it was not an emphatic 2:30 in the morning." Counsel added that Mrs. Reese "wasn't even sure, but maybe [movant] may have come home and left."

Counsel said he had no recollection of being told about a Phyllis or "Pepper" Craig. Concerning the 30 to 50 persons that movant contended could testify about his degree of intoxication, counsel said he was supplied only with the name of Leo Holton.

On appeal, movant claims his trial counsel's performance was rendered ineffective by his

> failing to call as witnesses Leo Holton and [movant's] wife Lorna Reese, both of whom could have provided an alibi defense for [movant], by failing to fully investigate witnesses who would have testified to [movant's] state of intoxication on the night of the alleged rape, and by failing to investigate possible witnesses among [the victim's] neighbors, specifically Phyllis Craig, who would

have testified that she noticed nothing unusual at [the victim's] house at the time of the alleged rape.

Movant contends the alleged ineffectiveness resulted in prejudice to his two-prong defense that he "was not at [the victim's] house on the night of the alleged rape, and [he] could not have raped [the victim] in any event, since he was too intoxicated to 'perform' sexually."

Our review · is limited to determining whether the findings, conclusions, and judgment of the motion court are clearly erroneous. Rule 27.26(j); *Richardson v. State*, 719 S.W.2d 912, 915 (Mo.App.1986). The motion court's findings, conclusions, and judgment are clearly erroneous only if a review of the entire record leaves the appellate court with a definite and firm impression that a mistake has been made. *Richardson*, 719 S.W.2d at 915. The motion court is not required to believe movant's testimony at a Rule 27.26 hearing, *Porter v. State*, 678 S.W.2d 2, 3 (Mo.App. 1984), and an appellate court gives due regard to the motion court's opportunity to hear witnesses and defers to its determination of credibility. *Houston v. State*, 623 S.W.2d 565, 567 (Mo.App.1981).

Counsel has a duty to make a reasonable investigation or to make a reasonable decision that a particular investigation is unnecessary. *Richardson*, 719 S.W.2d at 915. Counsel's duty to investigate the case against his client includes contacting potential witnesses named by the defendant who might aid in his defense. *Poole v. State*, 671 S.W.2d 787, 788 (Mo.App.1983). Whether it is reasonable for defense counsel not to interview the potential alibi witness is to be determined under the specific circumstances of each case. *See Sanders v. State*, 738 S.W.2d 856, 858 (Mo. banc 1987). A decision not to call a witness to testify is a matter of trial strategy that is virtually unchallengeable. *Gilmore v. State*, 712 S.W.2d 438, 441 (Mo.App.1986).

In denying movant's motion the court made extensive findings of fact and conclusions of law.[1] Applying the standards stat-

---

1. We quote in pertinent part from the motion

court's thorough and cogent findings and conclusions on the central issues raised by movant.

ed above to the findings and conclusions, we believe the motion court was not clearly erroneous.

Judgment affirmed.

GARY M. GAERTNER, P.J., and CRIST, J., concur.

8.A.(1)d Movant contends failure to call 30 people at party to testify to his state of intoxication constituted ineffective assistance of counsel. Mr. Farrer [movant's trial counsel] testified that he was furnished only with Leo Holton's name. Testimony was given by movant and by his present mother-in-law sufficient for a jury to conclude he was intoxicated.

It has been held that failure to produce cumulative alibi witnesses in the absence of a clear showing that they would have been helpful, is not ineffective representation by counsel. *Baker v. State,* 670 S.W.2d 597, 599[4] (Mo.App.1984); *Porter v. State,* 596 S.W.2d 480, 482[4] (Mo.App.1980).

*Wickham [Wickman] v. State,* 693 S.W.2d 862 (Mo.App.1985), applied this rationale in a case where ineffective assistance was alleged for counsel's failure to call witnesses who could have testified that the defendant was intoxicated prior to the offense. As in *Wickham [Wickman]* there is testimony to conclude [movant] was intoxicated at the time of the offense. Failing to call additional witnesses as to [movant's] intoxication did not constitute ineffective assistance of counsel.

8.A(1)f. Movant alleges ineffective assistance of counsel by counsel's failure to call Lorna Reese and Leo Holton, two available and known alibi witnesses.

Movant, without objection from the state, asked the court to consider an affidavit from Leo Holton which states movant was drunk on the date in question and saw him safely in the house. The affidavit does not state when he left movant off at his home.

Lorna Reese testified at the present hearing that movant arrived home at 2:15 a.m., stumbled in the house and passed out for the rest of the night.

Mr. Farrar testified that he considered calling both Mr. Holton and Ms. Reese and rejected calling either. Mr. Holton because of some inconsistencies in testimony and Ms. Reese because she was unable to establish the time movant returned home.

This court chooses to believe Mr. Farrar's memory of what the witnesses would have

said at trial, rather than what the witnesses now say they would have said. Their testimony was not precise enough at that time to have constituted an alibi.

If trial counsel believes a proposed witness would not unqualifiedly support defendant's position, not calling that witness is permissible trial strategy. *Walker v. State,* 715 S.W.2d 261, 262 (Mo.App.1986); *Eldridge v. State,* 592 S.W.2d 738, 741 (Mo. banc 1979). This point is denied.

Although not plead in either the original or amended motion movant has alleged that counsel's failure to find and interview one Phyllis Craig constituted ineffective assistance of counsel.

At this hearing testimony was received from Phyllis Craig. Ms. Craig is the across the street neighbor of the prosecutrix and testified that no lights were turned on at 2:15 a.m. on the night of the rape. Further that she was at the window at exactly that time and would have been able to see the lights.

Mr. Farrar testified that at no time in discussing the case with movant or Lorna Reese did the name of Pepper or Phyllis Craig come up as a possible witness.

To establish the alleged ineffective assistance of counsel the movant is required to prove the witness could have been located through reasonable investigation; that she would have testified if called; and her testimony would have established a viable defense. *Hogshooter v. State,* 681 S.W.2d 20, 21 (Mo.App.1984). Movant has failed to establish Ms. Craig's testimony would have constituted a valid defense, his request for relief on this point is denied.

CONCLUSION

To establish ineffective assistance of counsel, movant had to show that his attorney's performance did not conform to the degree of skill, care and diligence required of a reasonably competent attorney under similar circumstances. In addition movant was required to show prejudice. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). This, movant has not done; his motion is denied.